UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

BROWN COUNTY TAXPAYERS ASSOCIATION,
    Plaintiff,

  v.

JOSEPH R. BIDEN, JR.,
MIGUEL A. CARDONA,
RICHARD A. CORDRAY, and
U.S. DEPARTMENT OF EDUCATION,
OFFICE OF FEDERAL STUDENT AID,
    Defendants.

---

## VERIFIED COMPLAINT

---

The Brown County Taxpayers Association complains as follows:

### INTRODUCTION

1. On August 24, 2022, President Biden announced the creation of a massive new federal program that could cost taxpayers over $1 trillion. It's called the "One-Time Student Loan Debt Relief Plan." The problem is, for purposes of this lawsuit, that President Biden created this program unilaterally and without any legal authority from Congress. That's not how lawmaking works in America—at least since the signing of the Declaration of Independence, when the Founding Fathers complained that King George III imposed "Taxes on us without our Consent" and with them "erected a multitude of New Offices, and sent hither swarms of Officers to harass our people, and eat out their substance." President Biden's fiat here is nothing

more than a modern-day Stamp Act—a massive taxing and spending policy passed without participation of the People's representatives.

2. In defense of this new program, Defendants propose a fig leaf: they say the trillion-dollar program is authorized by the 9/11-era HEROES Act, which allows the President to forgive loans when "necessary in connection with a war or other military operation or national emergency." 20 U.S.C. § 1098bb(a)(1). Defendants say that because of COVID-19, all Americans are in a state of emergency, and therefore student loan debt may be wiped out with the stroke of a pen. Such an argument would be laughable if it were not so serious a violation of the Constitutional separation of powers. As confirmed by officials from the two preceding administrations, the HEROES Act does no such thing. The President is acting without any authority, and the HEROES Act is no justification.

3. Defendants plan to start spending what could ultimately be a thirteen-figure sum within the coming days unless the federal judiciary steps in and stops them. As such, Plaintiff requests an immediate injunction enjoining these officials from violating the Constitution.

## THE PARTIES

4. Plaintiff is the Brown County Taxpayers Association (BCTA), an unincorporated association organized under the laws of the State of Wisconsin. BCTA's business address is P.O. Box 684, Green Bay, Wisconsin 54305.

5. BCTA's mission is to promote individual freedom and citizen responsibility; limited government that is fiscally responsible, transparent, and

2

accountable to the people; and economic policy that encourages free markets, promotes entrepreneurism, respects property rights, and expands opportunity for the people of Brown County to prosper and live free, productive lives.

6. BCTA has over 100 dues-paying members who pay federal taxes, including individuals, businesses, and organizations. As taxpayers, BCTA members are on the hook for Defendants' plan. They will pay more in taxes to support a federal treasury that will be over $1 trillion smaller thanks to Defendants' unlawful program.

7. BCTA and its members advocate in favor of fiscally responsible federal tax policy. BCTA members are specifically concerned about the rising federal debt and that debt's impact on their future tax liability. Defendants' One-Time Student Loan Debt Relief Plan will, if enacted, negatively impact BCTA and each of its members, who will be forced to pay higher taxes and live in an America that is less prosperous, more fiscally irresponsible, and burdened by a higher federal debt. Moreover, another trillion dollars in debt added through the unilateral action of the President would force BTCA to alter its advocacy activities.

8. As an association of federal taxpayers, BTCA affirmatively alleges, on behalf of its members, that Defendants have unconstitutionally and unlawfully exercised "congressional power under the taxing and spending clause of Art. 1, § 8, of the Constitution" by forgiving student loan debt owed to the federal treasury, which is an appropriation of federal funds, 31 U.S.C. §§ 1301(a), 1341(a)(1)(A), and therefore "exceed[ed] specific constitutional limitations imposed upon the exercise" of that power, *Flast v. Cohen*, 392 U.S. 83, 102-103 (1968), by violating the Appropriations

3

Clause, Art. I, § 9, as informed by the Major Questions Doctrine, *West Virginia v. EPA*, 142 S. Ct. 2587 (2022), and the Equal Protection doctrine, *Miller v. Johnson*, 515 U.S. 900 (1995), by relying on an improper racially discriminatory motive.

9. Defendant Joseph R. Biden, Jr. is the President of the United States. Under the U.S. Constitution, Art. II, § 3, he must "take care that the laws be faithfully executed." Defendant Biden is personally involved in the implementation of the One-Time Student Loan Debt Relief Plan and is sued in his official capacity.

10. Defendant Miguel A. Cardona is Secretary of Education and agency head of Defendant United States Department of Education. He is charged by President Biden with the duty to oversee and implement the One-Time Student Loan Debt Relief Plan. He is sued in his official capacity.

11. Defendant Richard A. Cordray is the Chief Operating Officer of Federal Student Aid and responsible for managing and implementing the One-Time Student Loan Debt Relief Plan. He is sued in his official capacity.

12. Defendant United States Department of Education is an agency of the United States and includes the Office of Federal Student Aid, which is responsible for the One-Time Student Loan Debt Relief Plan.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over this complaint under 28 U.S.C. § 1331, § 2201, and 5 U.S.C. § 702, because this case presents a substantial question of federal law.

14. This Court has authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 & 2202 and 5 U.S.C. §§ 705, 706(2).

15. Venue is appropriate in this district under 28 U.S.C. § 1391(e)(1). A substantial part of the events giving rise to this claim occurred in this district, a substantial part of the property subject to this action is situated in this district, and Plaintiff and its members reside in this district.

## FACTUAL BACKGROUND

16. Defendant United States Department of Education, through various federal laws including the Higher Education Act of 1965 as amended and the Health Care and Education Reconciliation Act of 2010, holds a portfolio of student loans amounting to approximately $1,617,300,000,000.[1] This portfolio includes Direct Loans, Federal Family Education Loans, and Perkins loans with outstanding balances, and defaulted loans under a variety of programs.

17. By operation of federal law, borrowers owe this outstanding debt to the United States Department of Education, Office of Federal Student Aid, and by extension, the United States Treasury. *See, e.g.,* 34 C.F.R. § 682.102 (providing that "[a] borrower is obligated to repay the full amount" of a loan under the FFEL Program); *id.* § 685.207 (providing that "[a] borrower is obligated to repay the full amount of a Direct Loan").

---

[1] https://studentaid.gov/data-center/student/portfolio

18. Although borrowers owe this money to the federal government, Congress has provided several generous exceptions and provisions allowing repayment plans, reduced interest rates, loan consolidation, repayment incentives, deferment, borrower defenses, forbearance, and even loan cancellations. *See generally* 20 U.S.C. § 1087e, *see e.g.,* subsection (m) (allowing cancellation for public service employees). In short, Congress knows how to forgive loans when it wants to.

19. On August 24, 2022, Defendants announced a program broadly labeled, "Student Debt Relief Plan." One part of this plan is called the "One-Time Student Loan Debt Relief," under which Defendants will spend an estimated one trillion dollars without congressional authorization to cancel student loan debt for certain borrowers and up to certain amounts owed to the United States.

20. Under the plan, Defendants will forgive up to $20,000 to federal Pell Grant recipients and up to $10,000 in debt relief to non-Pell Grant recipients. Borrowers with loans held by the Department of Education are eligible if their individual income is less than $125,000 or $250,000 for households.

21. Defendants will forgive the following loans with an outstanding balance as of June 30, 2022: Federal Direct Loan Program loans, Federal Family Education Loan Program loans, Federal Perkins Loan Program loans, and any defaulted loans held by the Department of Education.

22. Defendants also announced other planned changes to monthly payment rules, the Public Service Loan Forgiveness Program, and other plans that are not

6

Case 1:22-cv-01171-WCG   Filed 10/04/22   Page 6 of 14   Document 1

challenged in this lawsuit. This lawsuit only challenges student loan cancellation, also known as "One-Time Student Loan Debt Relief."[2]

23. According to Defendants, the plan will benefit "up to 43 million borrowers, including cancelling the full remaining balance for roughly 20 million borrowers."[3]

24. Defendants contend that this plan is authorized by the Higher Education Relief Opportunities for Students Act (or HEROES Act). Under this law, the Secretary of Education may "waive or modify any statutory or regulatory provision applicable to" student aid programs when "necessary in connection with a war or other military operation or national emergency." 20 U.S.C. § 1098bb(a)(1). To qualify for relief, borrowers must reside or be employed in a "disaster area" as declared by a "Federal, State, or local official in connection with a national emergency." Defendants contend the entire United States of America is a "disaster area" and therefore everyone living here can obtain student loan forgiveness.[4]

25. Officials from the previous two administrations have determined that the President does *not* have the power to forgive student loans in this manner. *See* U.S. Department of Education, "Memorandum to Betsy DeVos Secretary of Education Re: Student Loan Principal Balance Cancellation, Compromise, Discharge and

---

[2] https://studentaid.gov/debt-relief-announcement/one-time-cancellation

[3] https://www.whitehouse.gov/briefing-room/statements-releases/2022/08/24/fact-sheet-president-biden-announces-student-loan-relief-for-borrowers-who-need-it-most/

[4] https://www.justice.gov/sites/default/files/opinions/attachments/2022/08/24/2022-08-23-heroes-act.pdf

7

Forgiveness Authority" (Jan. 1, 2021);[5] Gabriel Rubin, "Mass Student Debt Cancellation Legally Risky, Says Top Obama Education Lawyer," (Wall Street Journal, May 4, 2022).[6]

26. The "One-Time Student Loan Debt Relief" plan will begin "early October 2022." At that time, Defendants will post an application for borrowers to submit. Importantly, however, Defendants explain that "around 8 million borrowers" will have their loans forgiven automatically and without any notice. *See* U.S. Department of Education, *One-Time Student Loan Debt Relief FAQ*, ("Will any borrowers receive debt relief without applying?").[7] This action could happen any day.

27. According to the University of Pennsylvania's Penn Wharton Budget Model, Defendants' plan to forgive student loans will cost up to $519 billion, but "total plan costs could exceed $1 trillion."[8]

28. As part of the justification for this plan, Defendants announced an explicit racial motivation. The Student Debt Relief Plan is motivated by a desire to "advance racial equity" and "narrow the racial wealth gap." To achieve equity, the plan, according to the White House, is "more likely" to help "Black students," "Black borrowers," and "other borrowers of color." *See* White House, Fact Sheet, *supra*. The White House favorably cited the Urban Institute, which claims that Defendants'

---

[5] https://static.politico.com/d6/ce/3edf6a3946afa98eb13c210afd7d/ogcmemohealoans.pdf

[6] https://www.wsj.com/articles/mass-student-debt-cancellation-legally-risky-says-top-obama-education-lawyer-11651689489?mod=politics_lead_pos6

[7] https://studentaid.gov/debt-relief-announcement/one-time-cancellation

[8] https://budgetmodel.wharton.upenn.edu/issues/2022/8/26/biden-student-loan-forgiveness

8

chosen student loan forgiveness plan will "disproportionately benefit Black borrowers" and would be "far more racially progressive than broad forgiveness." Urban Institute, A More Targeted Approach to Student Loan Forgiveness (April 12, 2021).[9]

## COUNT 1
## Violation of the Constitutional Separation of Powers

29. Plaintiff incorporates all previous allegations.

30. Article I, Section 1 of the Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."

31. Article I, Section 7 of the Constitution provides that "before it become a Law," all bills must be passed by the Senate and House of Representatives and "presented to the President of the United States" for his signature.

32. Article I, Section 8 of the Constitution grants Congress the power to pay debts, borrow money, and make all laws necessary and proper for carrying into execution the enumerated powers.

33. Article I, Section 9 provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law."

34. By creating and implementing the One-Time Student Debt Relief Plan Defendants (all executive officials or departments) violated the Constitutional separation of powers by making laws, obligating the federal treasury, and reducing the net assets of the federal treasury without constitutional authority. In fact,

---

[9] https://www.urban.org/urban-wire/more-targeted-approach-student-loan-forgiveness.

through this plan, Defendants have unconstitutionally exercised the taxing and spending power of Congress under Article I, Section 8.

35. Defendants have usurped the constitutional authority of Congress by unilaterally exercising Congress's taxing and spending power without authority, and then using that power in violation of specific and express constitutional prohibitions, including the Appropriations Clause, as informed by the Major Questions Doctrine, and the Equal Protection doctrine, by employing an improper racial motive as described in Count 2.

## COUNT 2
## Violation of the Equal Protection Doctrine

36. Plaintiff incorporates all previous allegations.

37. "The Constitution created a government dedicated to equal justice under law." *Cooper v. Aaron*, 358 U.S. 1, 19 (1958). The Constitution forbids discrimination by the federal government "against any citizen because of his race." *Gibson v. Mississippi*, 162 U.S. 565, 591 (1896); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 216 (1995).

38. "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

39. "[A]ll racial classifications imposed by the government must be analyzed by a reviewing court under strict scrutiny." *Johnson v. California*, 543 U.S. 499, 505 (2005) (citation omitted). "Under strict scrutiny, the government has the burden of

proving that racial classifications are narrowly tailored measures that further compelling governmental interests." *Id.* (citation omitted).

40. Defendants created the One-Time Student Loan Debt Relief Plan with the express purpose of advancing "racial equity." Explaining that the purpose of the program is to "narrow the racial wealth gap," the White House explained that the program is intended to help "black students," "black borrowers," and "other borrowers of color." As such, Defendants have articulated an improper racial motive in creating and implementing the One-Time Student Loan Debt Relief Plan.

41. By creating and implementing a federal program with an improper racial motive, Defendants violated the Constitution's guarantee of equal protection of the laws, which among other things, prohibits federal spending based on race.

## COUNT 3
## Violation of the Administrative Procedures Act

42. Plaintiff incorporates all previous allegations.

43. Under the Administrative Procedures Act, a court must "hold unlawful and set aside agency action," "not in accordance with law," "contrary to constitutional …power," "in excess of statutory jurisdiction, authority, or limitations or short of statutory right," or "without observance of procedure required by law."

44. As alleged in Counts 1 and 2, the One-Time Student Loan Debt Relief Plan exceeds constitutional limitations on Congress's spending power.

45. Additionally, the One-Time Student Loan Debt Relief Plan violates the APA by exceeding statutory authority because the cancellation plan is not authorized under the HEROES Act, 20 U.S.C. § 1098ee(2).

46. Congress did not give clear authorization of this program as required by *West Virginia v. EPA*, 142 S. Ct. 2587 (2022).

47. The One-Time Student Debt Relief Plan also constitutes a "rule" under the APA and was not promulgated in accordance with law.

## RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

A. Enter a temporary restraining order prohibiting Defendants from forgiving any student loans under the One-Time Student Debt Relief Plan;

B. Enter a preliminary injunction prohibiting Defendants from forgiving any student loans under the One-Time Student Debt Relief Plan;

C. Enter a declaratory judgment declaring that Defendants do not have authority to forgive loans under the One-Time Student Debt Relief Plan;

D. Enter a declaratory judgment declaring that Defendants created the One-Time Student Debt Relief Plan with an unconstitutional racial motive;

E. Enter an order permanently enjoining Defendants from forgiving student loans without clear authorization from Congress;

F. Award Plaintiff its attorney fees under 28 U.S.C. § 2412 or other relevant laws; and

G. Grant Plaintiff such other and further relief as the court deems appropriate.

Dated: October 4, 2022       WISCONSIN INSTITUTE FOR LAW & LIBERTY, INC.

*/s/ Daniel P. Lennington*
Richard M. Esenberg
Daniel P. Lennington
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Facsimile: (414) 727-6385
Rick@will-law.org
Dan@will-law.org

*Attorneys for Plaintiff*

## VERIFICATION

1. I am the President of the Brown County Taxpayers Association (BCTA).

2. I have personal knowledge the activities, organization, mission, purpose, and plans of BCTA, which is a plaintiff in this lawsuit. If called upon to testify, I would competently testify as to the matters relevant to the BCTA and its claims.

3. I verify under the penalty of perjury under the laws of the United States that the factual statements in this Verified Complaint concerning BCTA are true and correct.

Dated: 10-1-22

Signature: /s/ Richard R. Heidel

Printed Name: <u>Richard R. Heidel</u>

14