UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BROWN COUNTY TAXPAYERS ASSOCIATION,

       Plaintiff,

     v.                                     Case No. 22-C-1171

PRESIDENT JOSEPH R. BIDEN, JR.,
SECRETARY OF UNITED STATES DEPARTMENT
OF EDUCATION MIGUEL A. CARDONA,
CHIEF OPERATING OFFICER OF FEDERAL
STUDENT AID RICHARD A. CORDRAY, and
UNITED STATES DEPARTMENT OF EDUCATION,

       Defendants.

---

## DECISION AND ORDER

---

On October 4, 2022, Plaintiff Brown County Taxpayers Association filed this lawsuit against Defendants President Joseph R. Biden, Jr., the Secretary of the United States Department of Education, the Chief Operating Officer of Federal Student Aid, and the United States Department of Education. Plaintiff seeks to enjoin Defendants from forgiving and/or canceling federal student loan debt according to the One-Time Student Loan Debt Relief Plan. The program is purported to be authorized by the Higher Education Relief Opportunities for Students Act of 2003 (HEROES Act), which grants the Secretary of Education authority to "waive or modify any statutory or regulatory provision applicable to the student financial assistance programs under title IV of the Act as the Secretary deems necessary in connection with a war or other military operation or national emergency." 20 U.S.C. § 1098bb(a)(1); *see also Slip Opinion: Use of the HEROES Act of 2003 to Cancel the Principal Amounts of Student Loans*, THE UNITED STATES DEPARTMENT

OF JUSTICE (Aug. 23, 2022), *available at* https://www.justice.gov/olc/opinion/use-heroes-act-2003-cancel-principal-amounts-student-loans.

Plaintiff alleges that Defendants, as executive branch officials, have usurped congressional powers under Article I, section 8 of the Constitution and created a program that obligates federal taxes and erases federal assets without any authority. Compl. ¶¶ 32–34. Plaintiff further alleges that Defendants created the One-Time Student Loan Debt Relief Plan with the express purpose of advancing "racial equity," meaning that the purpose of the program is to "narrow the racial wealth gap" by helping "black students," "black borrowers," and "other borrowers of color." *Id.* ¶ 40. Finally, Plaintiff alleges that the Plan violates the Administrative Procedures Act (APA) because it exceeds the authority granted the executive branch by the HEROES Act, 20 U.S.C. § 1098ee(2). *Id.* ¶¶ 43–45. Based upon these allegations, Plaintiff asserts three separate claims: Count I, Violation of the Constitutional Separation of Powers; Count II, Violation of Equal Protection Doctrine; and Count III, Violation of the APA. The case is before the court on Plaintiff's motion for a temporary restraining order and motion for a preliminary injunction.

In general, the showing required for a temporary restraining order and a preliminary injunction are the same. Specifically, a plaintiff must show that "(1) without this relief, it will suffer 'irreparable harm'; (2) 'traditional legal remedies would be inadequate'; and (3) it has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018)). If a plaintiff makes such a showing, the court proceeds to a balancing analysis, to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests. *Id.* Before turning to the merits of the motions, however, the court must first address the jurisdictional requirement of whether Plaintiff has standing to pursue this action.

Federal courts do not have jurisdiction to decide every legal question that may arise. Instead, Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies" brought by litigants who demonstrate standing. U.S. Const. art. III, § 2, cl. 1. The doctrine of standing is not an esoteric doctrine that courts use to avoid difficult decisions; it "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "In light of this 'overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of an important dispute and to "settle" it for the sake of convenience and efficiency.'" *Hollingsworth v. Perry*, 570 U.S. 693, 704–05 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 820 (1997)) (alterations omitted). "The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement.'" *Gracia v. SigmaTron Int'l Inc.*, 986 F.3d 1058, 1064 (7th Cir. 2021) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)). The plaintiff bears the burden of establishing each element. *Id.* (citation omitted).

Plaintiff asserts that it has taxpayer standing. The Supreme Court has repeatedly held, however, that "the payment of taxes is generally not enough to establish standing to challenge an action taken by the Federal Government." *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007); *Frothingham v. Mellon*, 262 U.S. 447 (1923); *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011). The "effect upon future taxation," the Court explained, is too "remote, fluctuating and uncertain" to give rise to the kind of redressable personal injury required under Article III. *Frothingham*, 262 U.S. at 487. Moreover, "if every federal taxpayer could sue to challenge any Government expenditure, the federal courts would cease to function as courts of law and would be cast in the role of general complaint bureaus." *Hein*, 551 U.S. at 593.

3

The Supreme Court carved out an exception to this general rule against federal taxpayer standing in *Flast v. Cohen*, 392 U.S. 83 (1968). There, the Court held that "taxpayers have standing to raise Establishment Clause challenges to specific congressional exercises of the Article I, Section 8 taxing and spending power." *Laskowski v. Spellings*, 546 F.3d 822, 826 (7th Cir. 2008) (citing *Flast*, 392 U.S. at 102–03). But the exception carved out by the Court in *Flast* is extremely narrow. *Hein*, 551 U.S. at 609 ("We have declined to lower the taxpayer standing bar in suits alleging violations of any constitutional provision apart from the Establishment Clause.") It does not even apply in all Establishment Clause cases. "Only when a taxpayer challenges a specific congressional appropriation—not a government program or activity funded from general appropriations—will the link to the Article I, Section 8 taxing and spending power be sufficient to support standing under *Flast*." *Laskowski*, 546 F.3d at 826 (citing *Hein*, 551 U.S. at 610; *Flast*, 392 U.S. at 102–03).

Even the narrow exception created in *Flast* has been the subject of much criticism. *See Hein*, 551 U.S. at 618, 637 (Scalia, J., concurring) ("*Flast* is wholly irreconcilable with the Article III restrictions on federal-court jurisdiction that this Court has repeatedly confirmed are embodied in the doctrine of standing. . . . *Flast* should be overruled."); *Winn*, 563 U.S. at 146–47 (Scalia, J., concurring) ("*Flast* is an anomaly in our jurisprudence, irreconcilable with the Article III restrictions on federal judicial power that our opinions have established. I would repudiate that misguided decision and enforce the Constitution.").

Notwithstanding the fact that the exception to the general rule against federal taxpayer standing has been sharply limited and criticized, Plaintiff seeks to take advantage of and expand that narrow exception. Plaintiff concedes that "no court has yet to apply *Flast* as advocated here." Dkt. No. 6 at 17. Nevertheless, Plaintiff contends that "*Flast*'s two-part test remains good law and that no Supreme Court decision has slammed the door on application of that test outside of the

4

Establishment Clause context." *Id.* But Plaintiff is mistaken: "the Supreme Court has now made it abundantly clear that *Flast* is not to be expanded at all." *Laskowski*, 546 F.3d at 826. This court certainly has no authority to do so.

In the absence of standing, Plaintiff's case must be dismissed for lack of jurisdiction. The court also notes, however, that even if Plaintiff did have standing, it is unclear that the preliminary relief Plaintiff seeks would be appropriate. A substantial question remains as to whether Plaintiff can demonstrate that it will suffer irreparable harm. If, as Plaintiff alleges, the executive branch lacks all authority to void student debts in the manner proposed, Defendants' action may be void or voidable. If that is so, a future administration may not be bound by such actions and may seek to collect the purportedly forgiven debts. The authority of the executive branch to take such action would likely be an issue in any such future collection action. Because Plaintiff lacks standing, that issue is not before the court at this time. Those seeking to take advantage of the program, however, may wish to consider this possibility before placing undue reliance on the benefits promised.

**IT IS THEREFORE ORDERED** that this case is **DISMISSED** for lack of standing. Plaintiff's motions for a temporary restraining order and for a preliminary injunction are **DENIED as moot**. Plaintiff's motion to stay pending appeal is **DENIED**. The Clerk is directed to enter judgment forthwith.

Dated at Green Bay, Wisconsin this 6th day of October, 2022.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge